UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

HENRY L. HOGAN,

    Petitioner,

v.                                                 Case No. 3:16-cv-446-J-34MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,
    Respondents.

## **ORDER**

### **I. Status**

Petitioner Henry Hogan, an inmate of the Florida penal system, initiated this action on April 12, 2016,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1). In the Petition, Hogan challenges a 2010 state court (Duval County, Florida) judgment of conviction for aggravated assault with a firearm and possession of a firearm by a convicted felon. Hogan raises two grounds for relief. See Doc. 1 at 4-16.[2] Respondents have submitted a memorandum in opposition to the Petition. See Answer in Response to Order to Show Cause (Resp.; Doc. 10) with exhibits (Resp. Ex.). Hogan did not submit a brief in reply; instead, he chose to rely upon the allegations as claimed in the Petition. See Petitioner's Reply to Order to Show Cause (Doc. 19). This case is ripe for review.

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

## II. Procedural History

On February 25, 2010, the State of Florida (State) charged Hogan, by way of an amended Information, with possession of a firearm by a convicted felon (count one) and aggravated assault (count two). Resp. Ex. A at 42. Hogan proceeded to a jury trial, at the conclusion of which on March 2, 2018, the jury found Hogan guilty as charged as to both counts, with a specific finding as to each count that Hogan actually possessed a firearm. Id. at 46-47. On April 21, 2010, the circuit court adjudicated Hogan to be a habitual felony offender (HFO), Id. at 165, and sentenced Hogan to a term of incarceration of fifteen years as to count one and ten years as to count two, with all terms to run concurrent with each other. Id. at 92-93, 165. The circuit court further imposed a three-year minimum mandatory sentence as to each count. Id. at 94, 165.

On direct appeal, Hogan raised one issue in his initial brief: the circuit court erred in denying his motion in limine to exclude any evidence of his contact with police on the day after the incident. Resp. Ex. E at 18-24. The State filed an answer brief. Resp. Ex. F. On March 22, 2011, Florida's First District Court of Appeal (First DCA) per curiam affirmed Hogan's judgment and sentences. Resp. Ex. G. The First DCA issued its Mandate on April 7, 2011. Id.

On August 17, 2011, Hogan filed a pro se Motion for Postconviction Relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 Motion). Resp. Ex. H at 1-10. In his Rule 3.850 Motion, Hogan alleged his trial counsel was ineffective for: misadvising him about the maximum sentence he faced when considering and ultimately rejecting the State's plea offer (ground one); and failing to object and request a mistrial after the State improperly commented on evidence not presented to the jury during closing arguments

2

(ground two). Id. On February 5, 2013, the circuit court denied the Rule 3.850 Motion. Id. at 14-17. Hogan filed a motion for rehearing, Id. at 53-55, which the circuit court denied on April 9, 2013. Id. at 57-58. On October 9, 2013, the First DCA reversed the circuit court's order and remanded the matter for an evidentiary hearing or the attachment of record documents refuting Hogan's allegations. Resp. Ex. M. The First DCA issued its Mandate on November 5, 2013. Resp. Ex. N.

On remand, the circuit court granted Hogan an evidentiary hearing as to ground one. Resp. Ex. O at 11-13. Afterwards, on July 14, 2014, the circuit court again denied Hogan's Rule 3.850 Motion. Id. at 30-35. The First DCA per curiam affirmed the circuit court's order on May 29, 2015, Resp. Ex. S, and issued its Mandate on July 2, 2015. Resp. Ex. T.

### III. One-Year Limitations Period

This action is timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise

precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Hogan's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court recently stated:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

5

> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[3] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1)'s "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834

---

[3] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that a petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

### B. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other."

7

Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, - U.S. at -, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). "In addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As

8

such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

Hogan alleges that the circuit court erred when it denied his motion in limine to exclude any evidence of his contact with law enforcement on April 7, 2009, the day after the incident. Doc. 1 at 4-14. According to Hogan, this evidence was irrelevant because the events of April 7, 2009 were not inextricably intertwined with and provided no material evidence in support of the charged crimes. Id. at 11-13. Moreover, Hogan complains this evidence was unduly prejudicial because it implied in the minds of the jury that law enforcement arrested Hogan on a separate unrelated firearms offense. Id. at 12-13.

On March 1, 2010, Hogan, with the assistance of counsel, filed a motion in limine to exclude any evidence or testimony referencing Hogan "being observed/stopped/detained/arrested by police officers on April 7, 2009 and any reference to weapons being found in the vicinity on that date." Resp. Ex. A at 49-51. Hogan argued that such evidence would not prove or disprove a material fact and would be unduly prejudicial because it would have led the jury to believe Hogan had been arrested on April 7, 2009 for offenses other than those charged in the Information. Id. The circuit court denied the motion without explanation. Resp. Ex. B at 5-6. Hogan raised this issue on direct appeal, arguing that the circuit court abused its discretion in allowing this evidence and testimony to be presented to the jury. Resp. Ex. E at 18-24. The First DCA per curiam affirmed the circuit court's denial without a written opinion. Resp. Ex. G.

9

To the extent that the First DCA decided this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Hogan is not entitled to relief on the basis of this claim.

Nevertheless, even if the state court's adjudication of this claim is not entitled to deference, Hogan would not be entitled to federal habeas relief. The Eleventh Circuit has explained:

> "As a general rule, a federal court in a habeas corpus case will not review the trial court's actions concerning the admissibility of evidence." Osborne v. Wainwright, 720 F.2d 1237, 1238 (11th Cir.1983). "However, where a state court's ruling is claimed to have deprived a defendant of his right to due process, a federal court should then inquire only to determine whether the error was of such magnitude as to deny fundamental fairness to the criminal trial." Id. (citations omitted).

Tidwell v. Butler, 415 F. App'x 979, 980 (11th Cir. 2011). Here, Hogan has not claimed the circuit court's ruling violated his right to due process. Doc. 1 at 4-14. Instead, Hogan argues in terms of state law only that the circuit court abused its discretion when it found this evidence relevant and not unduly prejudicial. Id. As Hogan has not raised a constitutional claim concerning due process of law, the Court cannot review the circuit court's action concerning the admissibility of this evidence. See Tidwell, 415 F. App'x at 980.

Even assuming the claim in Ground One can be construed to raise a claim of a due process violation, Hogan is not entitled to relief. "A denial of fundamental fairness occurs whenever the improper evidence 'is material in the sense of a crucial, critical, highly significant factor.'" Snowden v. Singletary, 135 F.3d 732, 737 (11th Cir.1998) (quoting Osborne, 720 F.2d at 1238). In order for the State to prove aggravated assault, it had to prove the following elements beyond a reasonable doubt: (1) Hogan intentionally and unlawfully threatened, either by word or act, to do violence to the victim; (2) Hogan appeared to have the ability to carry out the threat at the time; (3) Hogan's act created in the mind of the victim a well-founded fear that the violence was about to take place; and (4) Hogan used a deadly weapon. Resp. Ex. A at 55; §§ 784.011; 784.021, Fla. Stat. To establish the crime of possession of a firearm by a convicted felon, the State had to prove the following two elements: (1) Hogan had previously been convicted of a felony; and (2) after the conviction, Hogan knowingly had in his care, custody, possession, or control a firearm. Resp. Ex. A at 66; § 790.23(1)(a), Fla. Stat.

As to the aggravated assault charge, the record reflects the State introduced the following evidence: (1) two witnesses, including the victim, positively identified Hogan in court and in a photo line-up as the gunman who threatened her, Resp. Ex. B at 23-24, 32, 46-51, 59-61, 65-68; (2) the victim testified that Hogan verbally threatened the victim and pointed a gun at her, Id. at 26-28, 47-50; and (3) the victim also testified that she thought Hogan would shoot her and was afraid for her own safety and the safety of her child. Id. at 27-28. Based on these facts, the State had presented evidence that Hogan intentionally threatened the victim with words and acts, appeared to have the ability to carry out the threat, caused the victim to have a well-founded fear that violence would

11

soon occur, and used a deadly weapon to further that threat. Likewise, as to the crime of possession of a firearm by a convicted felon, Hogan stipulated at trial that he was a convicted felon prior to the incident. Resp. Ex. A at 40. Also, the State presented evidence that Hogan carried and possessed a firearm. Resp. Ex. B at 26-28, 45-50. Accordingly, the State provided competent substantial evidence to convict Hogan of possession of a firearm by a convicted felon. Therefore, even if evidence and testimony concerning what took place the day after the incident was not admitted, there is no reasonable probability the jury would have failed to convict Hogan on each count. As such, it cannot be said this evidence resulted in the denial of a fundamentally fair trial. See Snowden, 135 F.3d at 737. For the above stated reasons, the claim in Ground One is due to be denied.

**B. Ground Two**

In Ground Two, Hogan contends that he rejected a favorable three-year plea offer because his trial counsel misadvised him about the maximum sentence he faced if he proceeded to trial. Doc. 1 at 15-16. According to Hogan, his counsel failed to inform him he could be sentenced up to thirty years in prison as a HFO; instead, counsel allegedly told Hogan that he faced a maximum sentence of fifteen years in prison. Id. Hogan asserts that had he been properly advised, he would have accepted the three-year plea offer. Id. at 16.

Hogan raised a similar issue as ground one of his Rule 3.850 Motion. Resp. Ex. H at 2-4. Following an evidentiary hearing, the circuit court denied this claim, stating in pertinent part:

> At the June 24, 2014 hearing, the parties stipulated that a ten year sentence offer was actually made by the State, with a three year minimum mandatory, concurrent on both charges and that if the Defendant made a three year counter-offer, the

State would have accepted that offer. The parties further stipulated that the offer and willingness to accept ". . . the three years concurrent would not have been withdrawn by the State in light of intervening circumstances" and that the Court would have accepted three years concurrent and it would have been ". . . less severe than the judgment and sentence that in fact were imposed herein." Because this judge was not the one that actually imposed the fifteen year sentence and no evidence was offered on the position of the prior judge on the acceptance of a three year concurrent sentence, this Court will accept the parties['] stipulation on that issue. Therefore, in light of the foregoing stipulations, the State conceded that the only matter at issue is prejudice to the Defendant.

. . . .

The Defendant testified, at the June 24, 2014 evidentiary hearing, that he would have conveyed a three year offer to the State had he known he was actually facing a possible thirty year prison sentence as a habitual felony offender following a guilty verdict at trial. Although he testified to his belief that the State would accept a three year offer (without providing any basis for that belief), he denied knowledge of the State's ten year offer with a three year minimum mandatory and confirmed that he made no actual offer to the State. He gave no testimony that he would have accepted a State ten year offer with a three year minimum mandatory had he known of that offer. On cross examination, the Defendant also confirmed that he persisted throughout the litigation in asserting his complete innocence of the charge. He also acknowledged that he would not accept any offer from the State and did not authorize any offer to be conveyed prior to trial. According to his June 24, 2014 testimony, the Defendant did not convey any offer because he believed he was only facing a maximum fifteen years in prison, the sentence he actually received following a guilty verdict. However, he stated that he would have conveyed a three year offer if he had known he was facing a possible thirty year sentence because, for him, that would be equivalent to a "life sentence" given his age.

Also testifying at the June 24, 2014 hearing was Assistant State Attorney A. Garro, the prosecutor at trial. According to Mr. Garro, he conveyed a ten year offer with a three year minimum mandatory before trial. No three year offer was ever conveyed to the Defendant nor did he agree

(contrary to the stipulation) to accept any three year offer from the Defendant. Rather, Mr. Garro merely agreed to convey any three year defense offer to his superiors for their consideration.

Also testifying at the June 24, 2014 hearing was the Defendant's Assistant Public Defender at trial, B. Drake. On cross examination, she confirmed that the Defendant repeatedly stated that he would not plead to something he did not do. According to her testimony, she first learned of the Defendant's potential thirty year HFO exposure at the initial sentencing hearing. She was aware of the State's ten year offer with a three year minimum mandatory. Given the surprise filing, she described herself as "upset" at the filing of the HFO notice and no recollection with any specificity as to any offer that may have been made to the State on behalf of the Defendant. Even after the habitual offender notice was served and the case was passed for further sentencing proceedings, the Defendant still continued to assert his innocence, per Ms. Drake and no defense offer was ever made.

The stipulation of the parties is in conflict with the live testimony and this Court finds the live testimony to be more credible. Contrary to the stipulation of the parties, this Court finds that the State never indicated it would accept a three year counter-offer by the Defendant, if it were made. Rather, the Defendant testified that he would accept a three year offer from the State which was apparently never made or would have conveyed a three year offer if he had known of his HFO exposure, the ASA testified that a three year counter-offer by the Defendant would only be considered by his superiors but that there was no commitment to actually accept a three year counter-offer from the Defendant, and the APD testified that the Defendant asserted his innocence and would not plead to anything. In an effort to make factual findings, when a stipulation of the parties is in conflict with the record, this Court concludes it is free to disregard the stipulation of the parties and make its own factual findings, in light of live testimony. [See] Taylor v. State, 399 [So. 2d] 996, 998 (Fla. [2d] DCA 2007) (requiring factual findings in support of a 3.850 order), and Rule 3.850(8)(a), Florida Rules of Criminal Procedure, (requiring the Court to make findings of fact pursuant to an evidentiary hearing). Given that the Defendant testified at the June 24, 2014 hearing that he would have conveyed a three year offer if he knew of the thirty year exposure and ASA

> Garro's testimony that a three year defense offer was never conveyed and if it had been there was no commitment by the State to accept it, this Court finds that the Defendant has failed to establish that "he . . . would have accepted the offer had counsel advised the Defendant correctly. . .", under Alcorn.[4]
>
> Per Pietri, "there is a strong presumption that trial counsel's performance was not ineffective" and "the Defendant alone carries the burden of overcoming the presumption of effective assistance . . .". Pietri v. State, 885 [So. 2d] 245, 252 (Fla. 2004). Because no three year counter-offer was made and facts in evidence fail to establish that the State would have accepted the three year counter-offer by the Defendant if actually made, the Defendant has therefore not established "prejudice" because live testimony fails to prove that the State would have accepted a three year counter-offer by the Defendant before the jury's verdict. In light of the foregoing, this Court further concludes that the Defendant has failed to ". . . establish a probability sufficient to undermine confidence in [the] outcome" of the sentencing proceeding, per Strickland. Under Pieteri quoting Strickland, ". . . to prevail on a claim of ineffective assistance of trial counsel, Defendant must demonstrate, first, that counsel's performance was deficient, and second, that the deficient performance prejudiced the Defendant". [See] Strickland, 466 U.S. at 687. This the Defendant has not done with respect to prejudice. At best, the Defendant has established that he would have conveyed a three year counter-offer had he known of a thirty year exposure and that the State may have accepted that offer before trial. This Court finds that the foregoing contingency does not establish prejudice under Alcorn, because he has failed to establish that the State would have accepted his three year counter-offer and thus concludes he has failed to meet his burden under Pietri and Strickland.

Resp. Ex. O at 30-35. The First DCA per curiam affirmed the circuit court's order without a written opinion. Resp. Exs. S; T.

---

[4] Alcorn v. State, 121 So. 3d 419 (Fla. 2013).

To the extent that the First DCA decided this claim on the merits,[5] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Hogan is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim in Ground Two is without merit. In federal habeas proceedings, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." § 28 U.S.C.A. § 2254(e)(1). Under Florida law, in order to state a facially sufficient claim that counsel's alleged deficient performance led a defendant to reject a plea offer, the defendant must allege the following:

> (1) he or she would have accepted the offer had counsel advised the defendant correctly, (2) the prosecutor would not have withdrawn the offer, (3) the court would have accepted the offer, and (4) the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Alcorn v. State, 121 So. 3d 419, 422 (Fla. 2013).

---

[5] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

At the evidentiary hearing on Hogan's Rule 3.850 Motion, Hogan testified the State offered him a three-year plea offer, which he rejected because his counsel failed to inform him he faced a maximum sentence of thirty years, instead of fifteen years, in prison as a HFO. Resp. Ex. O at 64. According to Hogan, the State never offered a ten-year plea deal with a three-year minimum mandatory. Id. at 65, 67. Notably, Hogan testified that throughout the pre-trial process he maintained his innocence and told his counsel he would never accept a plea deal because of his innocence. Id. at 66-67. The prosecuting attorney, Andrew Garro, also testified at the hearing, stating that he never made a three-year offer, but did communicate a ten-year offer with a three-year minimum. Id. at 71. According to Garro, he let the defense know that if they made a counter-offer of three years he would present it to his superiors, but he never assured acceptance of such a counter offer. Id. at 72. Hogan's defense attorney, Brenda Drake, testified at the hearing that she was not aware Hogan faced a sentence as an HFO until the day of sentencing when the State filed its notice of intent to seek an HFO designation. Id. at 74-76. Drake also confirmed that the offer was a ten-year offer with a three-year minimum mandatory, but that the State seemed open to entertaining a three-year counter offer. Id. at 76-77. According to Drake, she encouraged Hogan to authorize a three-year counter offer, but Hogan refused, telling her he would not entertain any plea offer because he was innocent. Id. at 77.

The circuit court determined Drake and Garro's testimony was credible and made factual determinations that the State never made a three-year plea offer, Hogan would not have accepted any plea deal, and that Hogan failed to establish that the State would have accepted a three-year counter offer. Id. at 30-35. Hogan has offered no evidence,

clear and convincing or otherwise, that rebuts these factual determinations. Doc. 1. Therefore, the Court presumes these credibility and factual determinations are correct. See § 28 U.S.C.A. § 2254(e)(1). On these facts, Hogan has failed to establish that he would have accepted a plea offer, that the State even offered a three-year plea deal, or that the State actually would have accepted a three-year counter offer. Thus, Hogan has failed to prove the first two Alcorn elements. See Alcorn, 121 So. 3d at 422. As such, Hogan cannot demonstrate prejudice, and his claim of ineffective assistance of counsel in Ground Two is due to be denied. See Ward, 592 F.3d at 1163.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Hogan seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Hogan "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the

petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3. If Hogan appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4. The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 3rd day of December, 2018.

*MARCIA MORALES HOWARD*
United States District Judge

Jax-8

C: Henry L. Hogan, #288111
Jennifer Moore, Esq.

19